UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

REGINA WILLIAMS-PRESTON,

    Plaintiff,

        v.                                            Case No. 3:20-CV-773 JD

SOUTH BEND COMMUNITY SCHOOL
CORPORATION,

    Defendant.

## OPINION AND ORDER

The Defendant, South Bend Community School Corporation ("SBCSC" or

"Corporation"), has moved for summary judgment on the Plaintiff, Regina Williams-Preston's,

claim under 42 U.S.C. § 1983 (DE 29). Plaintiff, a former SBCSC employee, alleges that

SBCSC retaliated against her by denying her a promotion and transferring her to a different

school. Plaintiff alleges these actions were in retaliation for her criticism of decisions by SBCSC

and its employees. Plaintiff argues that her criticism constitutes protected speech under the First

Amendment as incorporated against the several states by the Fourteenth Amendment. For the

following reasons, the Court grants the motion.


### A. Factual Background

Plaintiff was an employee of SBCSC from 1999 until the Spring of 2020. (DE 30-2 at

5:25–6:5.) From 2009 until at least August 2019, she served as a Special Education Support

Team member.[1] (*Id.* at 6:9–14, 6:23–7:6; DE 38-6 at 6.) Her primary duties in this role included

---

[1] Plaintiff's deposition indicates she was a Support Team member until she left the Corporation
(DE 31-2 at 6:9–14), but her employment records and her response to Defendant's statement of material

supporting teachers, helping them complete Individualized Education Plans ("IEPs") for their students, and conducting district wide training on topics including classroom management, crisis prevention, and special education law. (DE 30-2 at 7:9–8:20.) As part of her role in supporting teacher IEP completion, Plaintiff attended IEP case conference meetings, helped teachers write IEPs, prepared IEP paperwork, and provided support for students during the day. (*Id.*) This role also involved Plaintiff advising and reporting when students were not receiving services in accordance with their IEPs and reporting when she observed actions which were "outside the bounds of special education law." (*Id.* at 10:1–17.) Over the course of her career in SBCSC, Plaintiff had been transferred between schools and team assignments multiple times. For the year or two prior to August 2018, Plaintiff was assigned exclusively to Clay High School. (*Id.* at 27:17–21, 28:8–12.)

During the course of her employment, Plaintiff alleges she observed issues with SBCSC's special education program and that she reported these issues to her supervisors. (*Id.* at 19:17–20:5.) These reports include five emails she sent to several of her supervisors in October 2015, March and April 2016, April 2017, and May 2017. (DE 30-3 at 4.) The emails raised issues including the Corporation failing to provide a student with services which were required by his IEP, Clay High School Principal Mansour Eid suspending a special education student longer than allowed by law, and Clay High School Assistant Principal Robert Smith improperly restraining a special education student. (*Id.* at 5.) Plaintiff also made an in-person report to her supervisor Matt Johns, the Director of Special Education, in 2014. (DE 30-2 at 19:17–20:5.) This in person meeting was to report how several Department members allegedly reacted positively

---

facts indicate she became a Cognitive Intervention Specialist in August 2019 (DE 38 at 1; DE 38-6 at 6). This ambiguity is irrelevant, however, as the Plaintiff's relevant speech acts occurred prior to August 2019.

when the Director preceding Mr. Johns shared an allegedly racist newspaper editorial with the department via email. (DE 30-3 at 4.)

Outside of her employment Plaintiff was also a community activist. She was a member and officer of activist groups including Black Lives Matter, South Bend, and the Community Forum for Economic Justice (DE 30-2 at 49:10–50:3.) Plaintiff alleges she used her role in these organizations to work with other citizens to shed light on the issues she was observing at SBCSC. (*Id.* at 20:7–24.) Plaintiff made multiple communications to officials within SBCSC alongside other activists or at public meetings.

Plaintiff's communications included her delivery of a letter on behalf of a parent, outlining that parent's concerns with the special education program, to Superintendent Kenneth Spells at a listening session he was hosting in September 2016. (DE 30-3 at 4.) In October 2017 Plaintiff, alongside three other activists, met with Superintendent Spells to report alleged civil rights violations and discrimination by Clay High School administration and to request an investigation into these problems. (DE 30-2 at 20:7–24) As part of this meeting Plaintiff and the activists submitted a written report detailing their allegations with supporting evidence. (*Id.*) From 2010 until August 2018, and at the time of this request to the Superintendent, Mr. Eid was the principal of Clay High School (DE 30-2 at 12:15–18; DE 38-2 at 8:10–16.) The alleged violations include that Mr. Eid's Assistant Principal Robert Smith was bullying students, Mr. Smith had threatened to shoot students, and the Clay High administration was conducting "shadow suspensions" of special education students by instructing parents to keep the children home without formally suspending them in violation of federal law. (DE 30-2 at 20:25–21:20.)

These communications also include an email, sent on behalf of multiple activist groups, to Superintendent Spells and the SBCSC Board on April 13, 2018. (DE 38-7 ¶ 12.) Plaintiff

alleges she assisted in sending this email. (*Id.*) The email told Superintendent Spells and the Board how Assistant Principal Smith had committed the previously discussed serious offenses, and that Principal Eid was aware of these offenses but had taken no corrective action. (*Id.*) The email went on to say that if Superintendent Spells and the Board did not address these issues, then the activists would inform the media of the issues. (*Id.*)

Plaintiff alleges SBCSC retaliated against her for this criticism in two ways. First, she alleges she was intentionally overlooked for promotion in 2013, and 2017, when she applied to be the Corporation's Director of African American Student and Parent Services. (DE 30-2 at 22:10–24:9.) Plaintiff did not apply for this position when it became available again in 2019. (*Id.* at 24:6–14.)

 Second, Plaintiff alleges she was retaliated against in August 2018 when Mr. Johns transferred her from Clay High School to Adams High School. (*Id.* at 25:7–13.) Plaintiff alleges Mr. Johns transferred her the day before the start of the academic year and after Mr. Eid requested that she be transferred. (*Id.* at 11:24–13:11.) Plaintiff alleges Mr. Eid requested the transfer because her activism was critical of his leadership at Clay High School. (*Id.* at 30:7–16.) Prior to making the transfer request Mr. Eid had been promoted, in early August 2018, from Principal of Clay High School to Director of High Schools for SBCSC. (DE 38-2 at 16:13–17.) In this position Mr. Eid had non-termination employment authority for high school personnel. (DE 38-5 ¶ 26.)

Plaintiff alleges this transfer was contrary to the "determinations [that] were made" by the Special Education Department over the summer of 2018 that she would remain at Clay for the coming school year. (DE 30-2 at 29:16–30:6.) Mr. Eid indicated that he requested Plaintiff's

transfer shortly after his promotion, but he does not recall the reason he sought the transfer.[2] (DE 38-2 at 17:13–19:9.) This transfer did not alter Plaintiff's job title, her salary, or her job responsibilities. (DE 30-2 at 51:15.) Plaintiff alleges this transfer inflicted hardship on her because she was responsible for a larger student body at Adams High which had a higher proportion of students on the autism spectrum, a cognitive impairment which she did not specialize in handling. (*Id.* at 31:1–21.) Further, Plaintiff alleges she had to work additional hours outside her normal schedule to manage this increased case load. (DE 35-7 ¶ 16.)

As previously noted, Plaintiff's transfer was ordered by Mr. Johns. As Director of Special Education, Mr. Johns answered directly to the Superintendent and Assistant Superintendent of SBCSC. (DE 30-4 at 6:12–24.) Mr. Johns' deposition testimony indicated that Plaintiff's placement decision had not been finalized over the summer of 2018. (*Id.* at 28:8–22.) Further, he indicated that Plaintiff was transferred to exchange places with her counterpart at Adams High. (*Id.* at 34:9–11.) Mr. Johns indicated this rearrangement was an effort to address the problems of poor IEP competition rates, and poor rapport between teachers and transition facilitators[3] at these two schools. (*Id.* at 21:6–15, 21:21–22:9, 34:7–24.)

Plaintiff alleges that when Mr. Johns first told her of the transfer, he indicated it was at the request of Mr. Eid and provided no further rationale for the decision. (DE 30-2 at 30:17–24.) Plaintiff also alleges Mr. John's description is inconsistent with an email that he sent her, dated

---

[2] Mr. Eid indicates he does not recall precisely who in the Special Education Department he made the request to, but indicates the request was probably made in a conversation. (DE 38-2 at 17:14–23.) SBCSC's reply to Plaintiff's statement of additional material facts concedes that Mr. Eid made the request to Mr. Johns personally. (DE 40 ¶¶ 31, 32.)

[3] The Court will use the terms transition facilitator and Special Education Support Team member interchangeably for the reasons discussed in Section (C)(2)(ii) of this Order.

August 13, 2018, indicating that she would be transferred to Riley High School and a different department member was to be transferred to Adams. (DE 38-8.)

Plaintiff filed this lawsuit in Indiana state court on August 14, 2020. (DE 4.) It was subsequently removed to this Court on September 15, 2020. (DE 1.)

### B. Legal Standard

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not a tool to decide legitimately contested issues, and it may not be granted unless no reasonable jury could decide in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). There must be more than a mere scintilla of evidence in support of the opposing party's position and "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009); *Anderson*, 477 U.S. at 252. Instead, the opposing party must have "evidence on which the jury could reasonably find" in his or her favor. *Anderson*, 477 U.S. at 252.

### C. Discussion

Plaintiff argues that she was retaliated against based on her exercise of her First Amendment rights. She argues this retaliation took two forms. First, that she was passed over for promotion to the position of Director of African American Student and Parent Services when she applied for it in 2013 and 2017. Second, that she was transferred from Clay High School to Adams High School in August 2018 and that this transfer constitutes a materially adverse employment action.

Determining whether a public employee's First Amendment rights have been violated utilizes a burden shifting framework. The first step in this framework is for the plaintiff employee to establish a *prima facie* case for violation of their rights. *Sweet v. Town of Bargersville*, 18 F.4th 273, 278 (7th Cir. 2021) (citing *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 670 (7th Cir. 2009)). To establish a *prima facie* claim for violation of their First Amendment rights, a public employee must present evidence that (1) her speech was constitutionally protected, (2) she suffered a deprivation likely to deter free speech, and (3) that her speech was at least a motivating factor in the employer's actions. *Id.* If the employee establishes her *prima facie* case, then the burden shifts to the defendant employer, at the second step, to demonstrate that it would have taken the same action regardless of the employee's protected speech. *Id.* At the third step, the burden then shifts back to the employee to produce evidence showing that the employer's proffered reason for the action was merely pretextual. *Id.*

SBCSC argues that Plaintiff has failed to establish any element of her *prima facie* case. Further, that they have met their burden at the second step, and that Plaintiff has not established SBCSC's reason was pretextual. SBCSC also argues that the statute of limitations for § 1983 actions precludes Plaintiff from arguing she was retaliatorily passed over for promotion to the

Director position. The Court will begin with the statute of limitations argument and then turn to the substance of Plaintiff's claim.

### (1) *The statute of limitation bars any claims relating to Plaintiff not receiving the Director position*

SBCSC argues that Plaintiff's claims related to the hiring of the Director of African American Student and Parent Services are barred by the statute of limitations. Plaintiff has not responded to this argument and the Court agrees with SBCSC.

Claims under § 1983 are subject to the statute of limitations period for personal injury actions in the state in which the alleged injury occurred. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). Plaintiff's alleged injury occurred in the State of Indiana, and Indiana's personal injury statute of limitations is two years. Ind. Code § 34-11-2-4. As Plaintiff filed her complaint on August 14, 2020, the statute of limitations excludes conduct which occurred before August 14, 2018. (*See* DE 4.)  Plaintiff only applied for the Director position in 2013 and 2017. Plaintiff did not address this argument in her response and therefore the Court finds any argument on the issue to be waived and abandoned. *Rangel v. Schmidt*, 2011 WL 4496506, *12 (N.D. Ind. Sept. 27, 2011) (internal citations omitted). Consequently, Plaintiff has not timely raised claims regarding these alleged denials of promotion and SBCSC is entitled to summary judgment regarding this conduct. As these were the only two times Plaintiff applied for the position, SBCSC is also entitled to summary judgment on her failure to promote claim.

The Court will also note that Plaintiff mentions in her statement of additional material facts that she did not apply for the Director position in 2019 because she was unaware of an opening and there was allegedly no job posting. (DE 38 at 8.)  This has no bearing on the Court's

statute of limitations analysis. Nor does it sustain Plaintiff's failure to promote claim. A plaintiff

must seek the position at issue in order to establish a failure to promote claim. *Riley v. Elkhart*

*Cmty. Schs.*, 829 F.3d 886, 892 (7th Cir. 2016) ("[Plaintiff] cannot prove a prima facie case

regarding the 2010 academic dean positions because she never applied for the positions.").

Accordingly, SBCSC is entitled to summary judgment on Plaintiff's failure to promote

claim.

### (2) *Plaintiff has not established a prima facie case of First Amendment retaliation*

As discussed previously, the first step in the burden shifting framework is for the plaintiff

to establish a *prima facie* claim for violation of her First Amendment rights. *Sweet*, 18 F.4th at

278. This requires the employee presenting evidence that (1) her speech was constitutionally

protected, (2) she suffered a deprivation likely to deter free speech; and (3) that her speech was at

least a motivating factor in the employer's actions. *Id.* SBCSC argues that Plaintiff has not

satisfied any of these elements. The Court finds Plaintiff has not satisfied the first element and no

analysis of the remaining two elements is necessary.

### (i) *Plaintiff's argument that her speech is constitutionally protected is waived as underdeveloped*

The Court begins with the question of whether Plaintiff's speech was constitutionally

protected. In holding that public employees "do not surrender all their First Amendment rights

by reason of their employment" the Supreme Court has noted the Amendment specifically

protects "a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).

Whether a public employee's speech was constitutionally protected is a question of law for the Court. *Kokkinis v. Ivkovich*, 185 F.3d 840, 843 (7th Cir. 1999). For a public employee's speech to be considered protected under the First Amendment, the employee must show "(1) she made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) her interest in expressing that speech was not outweighed by the state's interests as an employer in 'promoting effective and efficient public service.'" *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (quoting *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)).

The Court finds Plaintiff has not established her speech was made as a private citizen and therefore she has not established that the speech was protected. In order to be protected by the First Amendment, an employee's speech must be in her capacity as a private citizen and not as an employee. *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013) (citing *Renken v. Gregory,* 541 F.3d 769, 773 (7th Cir. 2008)). "'[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" *Id.* (quoting *Garcetti,* 547 U.S. at 421). Further, "'[S]peech that owes its existence to a public employee's professional responsibilities' does not implicate the employee's rights under the First Amendment." *Sweet*, 18 F.4th at 278 (quoting *Garcetti*, 547 U.S. at 421).

The Supreme Court has also noted that "protection of a government employee's exposure of misconduct involving his workplace is more properly provided by whistleblower protection laws and labor codes." *McArdle*, 705 F.3d at 754 (citing *Garcetti*, 547 U.S. at 425). The Seventh Circuit has elaborated on this point by holding "'[A]n employee's speech about misconduct

affecting an area within her responsibility is considered pursuant to her employment even when she is not strictly required to make it.'" *Sweet*, 18 F.4th at 278 (quoting *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 539 (7th Cir. 2016) (overruled on other grounds by *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)).

SBCSC argues that Plaintiff's speech was not constitutionally protected because it owes its existence to Plaintiff's duties as a SBCSC employee. Specifically, SBCSC argues her complaints about misconduct by other employees and SBCSC failing to meet its legal obligations for special education programs fall within her duties as a Special Education Team Member.

As previously discussed in the factual background section of this order, Plaintiff made several statements which she argues are protected speech. For convenience they can be divided into two groups. The first group being a series of emails she sent to her supervisors in SBCSC in October 2015, March and April of 2016, and April and May of 2017. The second group is statements she made to school officials that she made in conjunction with other members of the public. The second group includes her statement to the superintendent alongside a parent in September 2016, her statement to the superintendent alongside other activists in October 2017, and the email she helped an activist group send to the superintendent and the SBCSC Board in April 2018.

In her response, Plaintiff concedes that her emails to supervisors within SBCSC in October 2015, March and April of 2016, and April and May of 2017, were made in her capacity as an employee. (DE 37 at 2.) This conclusion is further supported by the record which indicates most of the issues raised seem related to her specific job duties. Plaintiff's complaint describes her own job duties as "assisting administrators and teachers with adhering to special education

11

laws." (DE 4 ¶ 16.) Therefore, these emails, which raised issues regarding the school's compliance with special education laws, fall into the category of "speech about misconduct affecting an area within her responsibility" which is considered speech pursuant to employment and are not protected speech. *Sweet*, 18 F.4th at 278 (quoting *Hatcher*, 829 F.3d at 539). Consequently, none of these complaints can sustain Plaintiff's First Amendment retaliation claim and the Court need not address whether these speech acts addressed a matter of public concern or if the interest balancing test favored the Plaintiff.[4]

While conceding her email complaints were made in her capacity as an employee, Plaintiff argues that she made other communications to "the superintendent, the board, and the media as a community activist and private citizen." (DE 37 at 2.)[5] Plaintiff does not specifically identify what speech acts she is referring to, but the Court infers from the record that she is referring to the three communications to the superintendent, identified previously, about alleged discrimination and civil rights violations in the special education program at Clay High School.

Plaintiff, however, only devotes a single conclusory sentence to argue that these statements fall "outside of Plaintiff's role as a transitional facilitator" and thus are protected speech. (DE 37 at 2.) Plaintiff does not discuss the factual details of any of these speech acts or explain how the law applies to these facts. Moreover, Plaintiff cites no legal authority in support of her argument.

---

[4] By this same logic, the Court would also find Plaintiff's 2014 in person statement to Dr. Johns constitutes unprotected employee speech. Moreover, Plaintiff has not explained why that statement is relevant to her retaliation claim given it involved issues unrelated to Clay High School's administration or Mr. Eid. Given the lack of explanation from Plaintiff, the Court finds this 2014 statement to be irrelevant.

[5] While Plaintiff asserts that she made statements to the media, she does not identify what those statements are, when they were made, or to whom they were made. The Court did not find any such statements during its review of the record.

SBCSC argues that the Court should find Plaintiff's argument to be waived as underdeveloped. The Court agrees. Arguments which are underdeveloped, cursory, and lack supporting legally authority are waived arguments. *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062–63 (7th Cir. 2020) (Finding an argument to be waived when the plaintiff only offered "a few cursory sentences in support of their freedom of association and right to petition the government claims, buried in the middle of other arguments, and without any adequate explanation at all that would aid our review."); *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 n.2 (7th Cir. 2019) ("As briefed, the argument is terse, free of legal citation, and vague. It is therefore waived."); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("Moreover, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).").

The Seventh Circuit has also repeatedly held that it is not the duty of the courts to prepare arguments on behalf of the parties or conduct their legal research for them. *Shipley*, 947 F.3d at 1062–63; *see also Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011); *Fednav Int'l Ltd. V. Cont'l Ins. Co.*, 624 F.3d 834, 842 (7th Cir. 2010). Further, at the summary judgment phase a non-moving party can waive an issue by failing to develop their arguments in response to the motion. *Ienco v. Angarone*, 429 F.3d 680, 684 (7th Cir. 2005) (finding that plaintiff waived claims by failing to develop them in response to the defendant's motion for summary judgment) (partially overruled on other grounds). Moreover, when a plaintiff only makes a perfunctory argument defending a claim, summary judgment should be granted. *Packer v. Trustees of Indiana Univ. Sch. Of Medicine*, 800 F.3d 843, 852 (7th Cir. 2015) (finding cursory defense of a claim on summary judgment resulted in waiver); *Jones v. LaPorte Cty. Sheriff's Dept.*, 2016 WL 1254367 (N.D. Ind. Mar. 29, 2016) (a non-movant's failure to address claims in response to a

motion for summary judgement waives those claims) (internal citations omitted); *Fitzpatrick v. City of Hobart*, 2007 WL 1560281, *7 (N.D. Ind. May 25, 2007) (finding plaintiffs had waived their claim at summary judgment by only providing "perfunctory legal analysis and no cites to supporting record evidence" in their brief).

The Court will also note that its survey of relevant caselaw indicates that whether public employee reports of misconduct at their workplace constitute speech protected under the First Amendment is a fact intensive and nuanced question. *See e.g. Fehlman v. Mankowski*, 588 F.Supp.3d 917, 923–24 (W.D. Wis. 2022) (thoughtfully analyzing an employee's duties in light of broader legal trends within the Seventh Circuit); *Swanson v. Vill. of Frederic*, 341 F.Supp.3d 965 (W.D. Wis. 2018) (conducting a detailed analysis of the plaintiff's job duties to determine whether her speech was protected); *Spalding v. City of Chicago*, 24 F.Supp.3d 765 (N.D. Ill. 2014) (surveying Seventh Circuit precedent, and comparing and contrasting case law in assessing whether the plaintiffs' speech was protected). Given the complexity of this legal question, Plaintiff's lack of meaningful discussion of this issue frustrates the Court's review of her claims.

The argument proffered in Plaintiff's response fits squarely into *Shipley*'s description of a waived argument as it contains no supporting legal authority, and lacks any analysis explaining her conclusory assertion that her statements were outside the scope of her job duties which would meaningfully aid the Court's review. Plaintiff does not meaningfully describe the facts of her case to the Court or apply the governing law to those facts. Specifically, Plaintiff asserts that her speech act fell outside her job duties but never discusses what those duties were. Nor does she identify what specific misconduct was discussed by her speech acts, or explain why the misconduct she reported did not affect an area within her responsibility. Nor does Plaintiff

explain how the fact the statements about workplace misconduct were made to her superiors within the SBCSC, the superintendent and the School Board, impact the protected speech analysis. Additionally, while Plaintiff does include factual allegations with citations to the record in her response to the defendant's statement of material facts, she does not articulate in her brief how these facts apply to her claim. This is insufficient to survive summary judgment. *See Fitzpatrick*, 2007 WL 1560281 at *7 ("even though Plaintiffs gave the Court a comprehensive appendix containing various factual assertions, they never articulated in their brief which of those facts applied to which claim.").

In contrast, SBCSC's motion is adequately developed. SBCSC's motion argues that Plaintiff's duties included assisting school staff with adhering to special education law and reporting when students were not receiving proper services. (DE 30 at 4–5 (record citations omitted).) This description is factually grounded in Plaintiff's description of her job duties in her deposition. (*Id.*) SBCSC argues, citing relevant case law, this means the issues she observed at the school were reported pursuant to her job duties and therefore do not constitute protected speech. (*Id.*) This is also supported by Plaintiff's statement that, at least some, of the issues she reported were violations of federal special education law. (*See e.g.* DE 30-2 at 20:25–21:20 (stating that the "shadow suspensions" of students with IEPs was a violation of federal law).) In sum, SBCSC has presented a reasonable argument, grounded in the law and facts of this case.

Plaintiff's response does not engage with the substance of SBCSC's argument and only responds with a conclusory assertion: "These are issues that fall outside of Plaintiff's role as a transitional facilitator."  (DE 37 at 2.) This conclusory statement and general denial of SBCSC's argument is not sufficient to protect Plaintiff's claim against summary judgment. *Burton v. Board of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017) ("It is a well settled

legal rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.") (quoting *Liberles v. Cook Cty.*, 709 F.2d 1122, 1126 (7th Cir. 1983)); *DePuy, Orthopaedics, Inc. v. Orthopaedic Hosp.*, 2017 WL 6345397, *4 (N.D. Ind. July 19, 2017) ("Mere denials or conclusory statements are insufficient to survive summary judgment.") (internal quotation omitted). Therefore, the Court finds Plaintiff has waived her First Amendment claim by failing to develop it in response to SBCSC's motion. *See Packer*, 800 F.3d at 852; *Ienco*, 429 F.3d at 684; *Jones*, 2016 WL 1254367 at *22.

As such, the Court finds that Plaintiff has failed to adequately develop her argument that her speech was made in her capacity as a private citizen. Consequently, she has also failed to establish her speech was protected under the First Amendment. *Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007) ("*Spiegla II*") ("The threshold inquiry is whether the employee was speaking as a citizen; only then do we inquire into the content of the speech.") (internal citation omitted)).

(ii) *In the alternative, the Court would find plaintiff's speech is not constitutionally protected on the merits*

In the alternative, the Court would find that Plaintiff's claim fails on the merits as the record before the Court indicates that her speech was made pursuant to her employee responsibilities.

As previously discussed, speech is only constitutionally protected if made in the employee's capacity as a private citizen. *McArdle*, 705 F.3d at 754 (7th Cir. 2013). Put another way, "'speech that owes its existence to a public employee's professional responsibilities' does not implicate the employee's rights under the First Amendment." *Sweet*, 18 F.4th at 278 (quoting

16

*Garcetti*, 547 U.S. at 421). This includes reporting misconduct about an area within the employee's responsibility. *Sweet*, 18 F.4th at 278.

A sister court has helpfully summarized the Seventh Circuit precedent describing when an employee's report of misconduct constitutes employee speech versus private citizen speech. The line which the Seventh Circuit has drawn is:

"If the employee reports misconduct in the manner directed by official policy, to a supervisor, or to an external body with formal oversight responsibility, then the employee speaks pursuant to her official duties and her speech is unprotected. … By contrast, if the employee testifies regarding misconduct to a jury or grand jury or reports misconduct outside established channels or in violation of official policy, she speaks as a private citizen and her speech is constitutionally protected."

*Spalding*, 24 F.Supp.3d at 776 (citing *Chrzanowski v. Bianchi*, 725 F.3d 734, 739–40 (7th Cir. 2013); *Chaklos v. Stevens*, 506 F.3d 705, 711–12 (7th Cir. 2009); *Tamayo v. Balgojevich*, 526 F.3d 1074, 1091 (7th Cir. 2008); *Vose v. Kliment*, 506 F.3d 565, 570–71 (7th Cir. 2007); *Sigsworth v. City of Aurora*, 487 F.3d 506, 511 (7th Cir. 2007); *Spiegla II*, 481 F.3d at 963).

Determining what side of this line speech falls on, and thus whether it is protected under the First Amendment, depends on the "'content, form, and context of the contested statement, as revealed by the whole record.'" *Kingman v. Fredrickson*, 40 F.4th 597, 602 (7th Cir. 2022) (quoting *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004) (*Spiegla I*)).

Before discussing whether the speech acts fell within the scope of Plaintiff's employment, the Court must outline the scope of Plaintiff's employment responsibilities. The Supreme Court and the Seventh Circuit have held that the inquiry into what an employee's official duties are should "be a 'practical one,' focusing on the 'duties an employee actually is

expected to perform,' as opposed to strictly what is listed in [her] formal job description." *Cage v. Harper*, 42 F.4th 734, 742 (7th Cir. 2022) (quoting *Garcetti*, 547 U.S. at 424–25).

As a preliminary matter, SBCSC takes issue with the accuracy of Plaintiff's description of her role as a transitional facilitator by alleging that term appears nowhere in her deposition or "anywhere else" and arguing this title is a retroactive attempt to minimize her job duties. (DE 41 at 5.) This contention is undercut by Mr. Johns' deposition where he refers to Plaintiff's role in SBCSC as a "transition facilitator" even though he could not recall her specific job title. (DE 30-4 at 18:10–23.) Plaintiff does not expound on what the duties of a "transitional facilitator" are in her brief or explain whether those duties are distinct from a Special Education Support Team member. As such, the Court cannot find that there is a meaningful distinction between those two titles and will rely on the record evidence to establish what her job duties at SBCSC were. The Court has previously summarized these duties in the Factual Background section of this order.

To recap; Plaintiff's primary duties as a Special Education Support Team member included supporting teachers, helping them complete IEPs for their students, and conducting district wide training on topics including classroom management, crisis prevention, and special education law. (DE 30-2 at 7:9–8:20.) This role also involved Plaintiff advising and reporting when students were not receiving services in accordance with their IEPs and reporting when she observed actions which were "outside the bounds of special education law." (*Id.* at 10:1–17.)

Returning to the speech act analysis, the Court will individually address each of the three speech acts.

The Court will begin with the October 2017, statement Plaintiff made in person to Superintendent Spells alongside other activists. During this meeting Plaintiff alleged civil rights violations and discrimination by Clay High administration. These include "shadow suspensions"

of special education students in violation of federal law, Assistant Principal Smith bullying students, and Mr. Smith threatening to shoot students. It is undisputed that as she was an employee of SBCSC, the superintendent and the SBCSC Board were the Plaintiff's superiors. (DE 30-2 at 6:12–24; DE 4 ¶ 26.) Therefore the fact she was reporting misconduct in the workplace to the superintendent means she was speaking pursuant to her official duties. *Spalding*, 24 F.Supp.3d at 776.

Buttressing this conclusion is the fact that her speech was related to misconduct within an area of Plaintiff's responsibility. *Sweet*, 18 F.4th at 278. Specifically, the use of shadow suspensions, which circumvents IEP related policies, relates to Plaintiff's duty to report actions outside the bounds of special education law. From the record it is unclear whether a Vice Principal threatening, or bullying, students is contrary to special education law and thus it is unclear whether Plaintiff's reporting of it falls within her formal job description. But even if reporting such conduct doesn't fall within Plaintiff's formal job description, it falls within her general duties as an educator to ensure her students' safety and welfare. *See Smith v. Ill. Sch. Dist. U-46*, 120 F.Supp.3d 757, 773–74 (N.D. Ill. 2015) (finding that plaintiff's reports about co-teacher's alleged criminal history were within his general responsibility to ensure the safety and welfare of his students and that complaints of the coworker's treatment of staff and students in the workplace were also pursuant to his official duties). As such, the Court finds this statement is not protected speech.

The Court will now turn to the April 2018, email sent to Superintendent Spells and the SBCSC Board. The content of this email was raising the same issues as raised in the October 2017 in person meeting with the superintendent and it also threatened to report the issues to the media if they were not addressed. The Court finds this email to be unprotected for the same

19

reasons as the October 2017 meeting. Again, this statement about alleged workplace misconduct was made to Plaintiff's superiors within SBCSC. *Spalding*, 24 F.Supp.3d at 776. Further, as previously described, the alleged misconduct was within an area of Plaintiff's responsibility. Therefore, the Court would find that this statement is also not protected speech.

Finally, the Court will turn to Plaintiff's September 2016, statement to Superintendent Spells alongside a parent at a listening session. The content of Plaintiff's statements related to that parent's concerns about how her children were being treated in Clay High's special education program. Once again, the fact that Plaintiff made these complaints to her supervisor is dispositive. *Spalding*, 24 F.Supp.3d at 776. Plaintiff has not demonstrated that this was a public meeting, which would weigh slightly in Plaintiff's favor. *See Kingman*, 40 F.4th at 602 (noting that plaintiff's choice to air his concerns in a public city council meeting suggests he intended to speak as a private citizen on a matter of public concern). Even if the meeting were public, the content of Plaintiff's statement would firmly place it on the employee speech side of the line drawn by the Seventh Circuit. Plaintiff bringing complaints about a student's experiences in the special education program at Clay High is squarely within her responsibility to report when students were not receiving proper special education services and actions which were "outside the bounds of special education law." (DE 30-2 at 10:1–17.) Consequently, the Court would also find that this statement is unprotected speech.

As Plaintiff has not established her speech was made as a private citizen, the Court need not reach the issue of whether it addressed a topic of public concern or whether her interest in expressing the speech was outweighed by SBCSC's interest as an employer in promoting effective and efficient public service. Similarly, as Plaintiff has not established a *prima facie* case that any of her speech was protected, the Court does not need to analyze whether she suffered a

deprivation likely to deter free speech; or whether her speech was at least a motivating factor in the employer's actions.

Accordingly, because Plaintiff has not established any of her statements constitute protected speech, she has failed to establish a *prima facie* case of First Amendment retaliation and SBCSC is entitled to summary judgment.


### D. Conclusion

For the reasons previously stated, South Bend Community School Corporation's motion for summary judgment is GRANTED (DE 29). Plaintiff's claims are therefore DISMISSED WITH PREJUDICE. The Clerk is DIRECTED to CLOSE this case.

SO ORDERED.

ENTERED: February 17, 2023

_____ /s/ JON E. DEGUILIO_____
Chief Judge
United States District Court